UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ILYA MANYK,

                              Plaintiff,

        -against-

WESTERN UNION COMPANY FINANCIAL
CO. and UKRANIAN FINANCIAL GROUP,

                            Defendants.

------------------------------------------------------------x



07 Civ. 6260 (GEL)

**OPINION AND ORDER**

Alexander J. Segal, Grinberg & Segal, P.L.L.C.,
New York, NY, for plaintiff.

Garrett Duffy, Fogarty, Felicione & Duffy, P.C.,
Mineola, NY, for defendant Western Union
Financial Co. Inc.

GERARD E. LYNCH, District Judge:

      Plaintiff Ilya Manyk, a citizen of Australia and a resident of Odessa, Ukraine, brings this personal injury action against Western Union Company Financial Co. ("Western Union") and Ukranian Financial Group ("UFG"), alleging that he was assaulted by another individual when he went to collect a money transfer at a UFG outlet in the Ukraine. UFG has not appeared in this action or responded to the complaint. Following an extension of discovery, Western Union moves for summary judgment, on the basis that plaintiff has not adduced any evidence that the assailant was an employee or agent of Western Union. Also pending is plaintiff's motion to reopen discovery. For the reasons set forth below, the motion for summary judgment will be granted and the motion to reopen discovery will be denied.

## BACKGROUND

The following facts are either uncontested or taken in the light most favorable to the plaintiff. On July 22, 2004, Ilya Manyk went to UFG's office at 10 Deribasovska Street in Odessa, Ukraine, to collect a money transfer sent through Western Union Financial Services, Inc. (Deposition of Ilya Manyk, dated July 2, 2008 ("Manyk Dep."), 15:19–19:10.) UFG rented a small portion of the premises to exchange currencies and provide money transfer services. (Affidavit of Garrett Duffy, dated December 4, 2008 ("Duffy Aff."), Ex. E ¶ 2.) The premises was otherwise occupied by a branch of SocCom Bank, which is not a party to this action. (Id.)

When Manyk went to the UFG window to request the money that he believed had been transferred to him, a UFG employee, Olga Olexiyivna Pysarenko *née* Illinskaya, told Manyk that the proceeds from the transfer had already been collected. (Duffy Aff. Ex. F ¶ 2; Manyk Dep. 38:16-20.) Manyk alleges that Pysarenko then called him a "crook" and told him to leave. (Manyk Dep. 39:2-16.) Manyk called the police, who subsequently summoned the manager of the UFG branch, Olexander Stanislavovych Chehovsky. (Manyk Dep. 40:5-45:15; Duffy Aff. Ex. F ¶ 3.) When Chehovsky arrived, he reiterated that UFG could not pay the money transferred to Manyk because the available records indicated that the proceeds from the transfer had already been collected at the Aval Bank. (Duffy Aff. Ex. E ¶ 4; Manyk Dep. 45:8-18, 47:13-23.) Chehovsky suggested that Manyk contact the sender to clarify the transaction details. (Duffy Aff. Ex. E ¶ 4.)

The police then escorted Manyk to the Aval Bank branch at Sadovaya Street. (Manyk Dep. 49:3-7.) At Aval Bank, the police were told that the money transfer had not been paid. (Pl.'s Opp. at 2.) Manyk eventually learned from the sender, Olena Anatoliyivna Yashnik, that the clerk processing the money transfer in Kiev had made a mistake and that the transfer had

been annulled. (Manyk Dep. 51:13-17.)

Yashnik sent Manyk a new money transfer and on July 23, 2004, Manyk returned to UFG's window at 10 Deribasovska Street to collect the funds. (Manyk Dep. 53:8-18.) Manyk again spoke with Pysarenko (Manyk Dep. 67:9-24), who could not or would not execute the transaction. (Duffy Aff. Ex. F ¶ 5; Manyk Dep. 67:11-24.) Manyk requested to speak with the UFG manager and then headed toward the door in order to phone the police. (Manyk Dep. 68:17-21, 69:5-12.)

Manyk alleges that, as he was leaving, Pysarenko instructed an unnamed young man – a co-worker – "to throw this crook out of the bank." (Manyk Dep. 56:5-9, 71:2-3.) An assailant then grabbed Manyk from behind, twisted his hand, turned his back to the door, kicked him in the stomach, threw him out and threatened to "break [his] head" if Manyk returned. (Manyk Dep. 78:10-20, 83:15-17.) When Manyk was thrown out of the building, he hit the railing and landed on the ground. (Manyk Dep. 81:17-20.)

Manyk's brother-in-law, Yevgeniy Shashkov, was waiting outside and saw Manyk thrown out of the bank. (Manyk Dep. 115:10-15.) After Shashkov helped Manyk up, they took a taxi to the Aval bank at Sadovaya Street where Manyk successfully retrieved his funds. (Manyk Dep. 120:3-25.)

On July 27, 2004, Manyk filed a complaint with the police at the Odessa Primorsky District Department of Internal Affairs emphasizing the verbal abuse he suffered at the hands of Pysarenko and an unnamed SocCom Bank manager. (Segal Aff. Ex. E.) In that complaint, Manyk said the "flood of [verbal] abuses . . . ended when I was grabbed by a young man and was thrown out into the street." (Segal Aff. Ex. E ¶ 6.)

Manyk claims he was seriously injured in the assault. Slightly less then a month after the incident, Manyk called a psychiatric hotline for help and on August 16, 2004, he met with a psychiatrist. (Manyk Dep. 124:15-22.) Later that month, Manyk was admitted to a psychiatric clinic where he remained until December. (Manyk Dep. 129:2-11.) In 2005, Manyk complained of pain in his right kidney and the clinic found blood in his urine. (Manyk Dep. 143:3-9.)

## DISCUSSION

I. Summary Judgment

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must resolve all ambiguities and construe all facts in the nonmovant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Nevertheless, the nonmoving party cannot defeat a motion for summary judgment by relying solely on "conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmovant must "by affidavits or as otherwise provided . . . set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2), and come forward with "evidence on which the jury could reasonably find for the nonmovant." Pocchia v. NYNEX Corp., 81 F.3d 275, 277 (2d Cir. 1996), quoting Anderson, 477 U.S. at 252. If the nonmovant's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

II. Vicarious Liability

The threshold issue raised by this motion is whether plaintiff's assailant is, as plaintiff alleges, a "Western Union worker." (Manyk Dep. 55:21-22.) On the present record, there is not

a triable issue of material fact whether plaintiff's assailant worked for, or was the agent of, Western Union. Accordingly, there is no basis for imputing liability for the assault to Western Union.[1]

The record is replete with evidence that the assailant was not an employee of Western Union. The manager of UFG's 10 Deribasovska Street branch, Olexander Chehovsky, avers that Western Union did not own, lease, operate or control the premises and that no employees or representatives of Western Union were employed at the branch on July 22 or 23, 2004, the days plaintiff visited the UFG branch. (Duffy Aff. Ex. E ¶¶ 3, 6.) This evidence is undisputed. Plaintiff, indeed, does not argue that the assailant was an employee of Western Union. Rather, plaintiff relies on the fact that Pysarenko, who was the only UFG employee on duty the day of plaintiff's assault, was an *agent* of Western Union, and therefore her actions, and/or those of her purported "co-worker," can serve to impute liability for the assault to Western Union. Plaintiff acknowledges that he has no other reason to pursue Western Union other than his recollection that Pysarenko told a man – that Pysarenko allegedly identified as her co-worker – "to throw [Manyk] out." (Manyk Dep. 56:5-9, 59:7-60:3, 71:2-3.)

But even if Pysarenko made the remark – which Pysarenko denies and is, at best, inconclusive as to the identity or affiliation of Manyk's ultimate assailant -- it would be

---

[1] Plaintiff also brings a claim against Western Union for defamation, but plaintiff has not opposed Western Union's motion for summary judgment on this claim. Accordingly the claim is abandoned. See Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citations omitted); see also Barlow v. Connecticut, 319 F. Supp. 2d 250, 266-67 (D. Conn. 2004) (finding that courts may deem abandoned any claims not fully briefed in a motion for summary judgment). Even if plaintiff had responded to Western Union's motion, however, the defamation claim would be dismissed on the merits because, for reasons that are substantially similar to those explained below, Western Union is not vicariously liable for Pysarenko's alleged statement that plaintiff was a "crook."

insufficient to establish that *Western Union* is liable for plaintiff's injury. The controlling issue is the scope of the relationship between Western Union and UFG – specifically, whether the agency relationship between the two companies permits imputing the general torts of the agent, UFG, to the principal, Western Union. It does not.

New York law is well-settled that, where, as here, an agency relationship exists solely for a specific purpose – here, the effectuation of money transfers – liability cannot attach to the principal for torts unrelated to the scope of the agency. See McGarry v. Miller, 550 N.Y.S.2d 896, 897 (1st Dep't 1990), citing Greene v. Hellman, 51 N.Y.2d 197 (1980). The signed agreement between Western Union and UFG is pellucid that the purpose and scope of the relationship between the parties is restricted to UFG's actions in offering for sale and redeeming money transfers.[2] (See Duffy Aff. Ex. A ¶ 1.) In a section entitled "Authority" the agreement expressly limits the extent to which the UFG acts within the scope of Western Union's authority. It states:

> This Agreement shall not constitute or be deemed to constitute a partnership between the parties. No employee or agent of either party shall be deemed to be an employee or agent of the other for any purpose whatever. Except for [UFG's] proper origination and paying out of money transfers in accordance with the Service Requirements and this Agreement, neither party shall have the authority to make any agreement or commitment or incur any liability on behalf of the other, and neither party shall be liable for

---

[2] Specifically, the agreement provides that

> [UFG] shall (a) receive funds from customers for transfer to any other location in the world at which Western Union's Money Transfer Service is available and (b) make payments to recipients of money transfers which have been initiated through Western Union or from any other location in the world at which Western Union's Money Transfer Service is available.

(Duffy Aff. Ex. A ¶ 1.)

> any acts, omissions, agreements, commitments, promises or representations made by the other, except as otherwise specifically provided herein.

(Duffy Aff. Ex. A ¶ 21(H).)

This provision squarely forecloses plaintiff's argument that Western Union is liable for Pysarenko's statements or for the actions of her purported "co-worker." It clearly states that Western Union cannot be held responsible for plaintiff's injuries because – even if there were a colorable argument that the assailant was an employee of UFG or that Pysarenko proposed that Manyk be "thrown out" of the bank[3] – any such tort would be outside the scope of the principal-agent relationship. After full discovery, plaintiff offers no evidence of any actions of either Western Union or UFG inconsistent with the limited agency conferred by the agreement, or indicative of a broader relationship than that defined there.

This point is dispositive. Even drawing all justifiable inferences in plaintiff's favor, and assuming arguendo that UFG might be liable for any injuries suffered by plaintiff, there is simply no evidence, given the nature and scope of the agency relationship between UFG and Western Union, that liability could attach to Western Union.[4] In sum, plaintiff has not "by

---

[3] Pysarenko claims that she had never seen the young man who interacted with Manyk before and has never seen him since. (Duffy Aff. Ex. F ¶¶ 5, 6.) Pysarenko testifies further that she knew all of the UFG employees who had any responsibilities related to the 10 Deribasovska Street branch and asserts that the young man she saw interacting with Manyk was neither an employee nor affiliate of UFG. (Duffy Aff. Ex. F ¶ 7.) After full discovery, plaintiff has been able to produce no evidence apart from the alleged "co-worker" remark identifying the man or tending to prove his employment by or affiliation with UFG.

[4] Moreover, the only evidence on which plaintiff relies to establish the identity of his assailant – Pysarenko's remark – would be inadmissable hearsay against Western Union for precisely the same reason there is no liability in the first place: it is not a statement "by [Western Union's] agent or servant concerning a matter within the scope of the agency or employment." Fed. R. Evid. 801(d)(2)(D); see Pappas v. Middle Earth Condominium Ass'n, 963 F.2d 534, 537 (2d Cir. 1992).

affidavits or as otherwise provided . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).[5] Accordingly, summary judgment will be granted.

## III.   Motion to Reopen Discovery

Plaintiff moves to reopen discovery on a "failure to train" theory. Specifically, plaintiff seeks to discover whether Western Union might have been negligent in the hiring, instructing or supervising [UFG] as an independent contractor." (Pl. Opp. at 19.)

The proper standard for assessing plaintiff's motion is provided by Rule 56(f), Fed. R. Civ. P. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303-04 (2d Cir. 2003). Rule 56(f) gives the court discretion to deny or defer an otherwise supported motion for summary judgment to allow for further discovery if the nonmoving party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion for summary judgment. Parties seeking to reopen discovery must detail (1) the specific facts sought and how they anticipate obtaining them, (2) "how those facts are reasonably expected to create a genuine issue of material fact," (3) other efforts made to obtain those facts, and (4) "why those efforts were unsuccessful." Burlington Coat Factory Warehouse, Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir. 1985).

On these criteria, plaintiff's request is wholly without merit. First, plaintiff has enjoyed ample opportunity to conduct discovery in this case and there is absolutely no reason, and plaintiff offers none, why he could not have pursued this theory during discovery. Indeed, the

---

[5] Plaintiff claims to have raised other triable issues of fact, including that his version of events contradicts Pysarenko's version, and alleges that Chehovsky's affidavit is deficient because Chehovsky was not physically present on the day of the incident and therefore lacks personal knowledge as to who was there on that day. (Pl. Opp. at 9-10.) None of these disputes is material to whether Western Union is liable for the actions of plaintiff's assailant.

8

documents plaintiff admits he is seeking are wholly repetitive of the discovery that has already taken place.

Second, a Rule 56(f) request should be denied where additional discovery will not uncover a genuine issue of material fact. See, e.g., Trebor Sportswear Co., Inc. v. The Ltd. Stores, Inc., 865 F.2d 506, 511-12 (2d Cir. 1989). Because there is no triable issue that the plaintiff's assailant was employed by, or an agent of, Western Union, nothing that plaintiff could discover about Western Union's conduct with respect to the hiring, instructing or supervising of UFG could be relevant to plaintiff's injuries. Moreover, as a matter of straightforward contract interpretation, the agreement between Western Union and UFG forecloses as a matter of law that Western Union could be liable to plaintiff on a "failure to train" theory. Accordingly, plaintiff's motion to reopen discovery is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to reopen discovery is denied and defendant's motion for summary judgment is granted. The clerk is respectfully directed to enter judgment dismissing the complaint and to close the case.

SO ORDERED.

Dated: New York, New York
May 27, 2009

_____
GERARD E. LYNCH
United States District Judge